COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judge Bumgardner and
          Senior Judge Hodges


CITY OF PORTSMOUTH SHERIFF'S DEPARTMENT
                                        MEMORANDUM OPINION*
v.    Record No. 2698-00-1                   PER CURIAM
                                           MARCH 27, 2001
HARRY W. TORBERT


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            (William C. Walker; Donna White Kearney;
            Taylor & Walker, P.C., on brief), for
            appellant.

            (Alan P. Owens, on brief), for appellee.


     City of Portsmouth Sheriff's Department (employer) contends

that the Workers' Compensation Commission erred in finding that

employer failed to present sufficient medical evidence to rebut

the statutory presumption contained in Code § 65.2-402 that

Harry W. Torbert's (claimant) heart disease is an occupational

disease under the Workers' Compensation Act ("the Act").  Upon

reviewing the record and the briefs of the parties, we conclude

that this appeal is without merit.  Accordingly, we summarily

affirm the commission's decision.  See Rule 5A:27.

────────────────

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

On appeal, we view the evidence in the light most favorable to the prevailing party below.  See R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990).

So viewed, the evidence proved that appellant had been a Portsmouth City police officer for twenty-five years.  In 1989, the Portsmouth Sheriff's Department hired claimant as a deputy sheriff/corrections officer.

In 1987, claimant was diagnosed with diabetes.  Since at least 1994, claimant had intermittently treated his diabetes with medication.  In January 1991, claimant had an abnormal electrocardiogram.  In August 1996, a left atrial hemi-block was discovered in claimant.

Claimant's job required that he process inmates in and out of jail, supervise their meals and activities, and transport them to and from court and other jail facilities.  Claimant testified regarding various job stressors primarily related to conflict with his supervisors.

On November 15, 1998, as claimant was carrying meals to an outside facility, he felt pain in his left arm and experienced shortness of breath.  The next day, he reported to Maryview Medical Center emergency room, where he was examined by Dr. Kasedul Hoq.

Dr. Hoq recorded a history of non-insulin dependent diabetes mellitus, controlled hypertension, and diabetic polyneuropathy.  Dr. Hoq noted that claimant experienced chest

-

pain on Saturday night, fell asleep, and awoke without any problem. He noted that claimant reported to work, where he felt chest pain and then reported to the hospital. Dr. Hoq diagnosed chest pains, non-insulin dependent diabetes mellitus, diabetic polyneuropathy, and controlled hypertension.

Dr. Philip R. Goldstein, a cardiologist, examined claimant upon Dr. Hoq's request for a consultation. Dr. Goldstein noted that claimant suffered from a history of high blood pressure, which had resolved, and a history of an irregular heartbeat, but no history of a weak or enlarged heart, heart attack, heart murmur, or rheumatic fever. Dr. Goldstein noted that claimant had diabetes and that on average, he smoked one pack of cigarettes per day. A November 18, 1998 cardiac catheterization showed an "anterior wall myocardial infarction recently but not in this admission." Dr. Goldstein diagnosed claimant as suffering from severe arteriosclerotic heart disease and coronary artery abnormalities.

Dr. James C. Laroque, an endocrinologist, who consulted to assist in managing claimant's diabetes, noted on November 19, 1998, that the medication claimant had been taking to control his diabetes "is considered to have been contributing to [his] heart failure because of its tendency to cause sodium retention."

On November 23, 1998, claimant was discharged from the hospital. His final diagnosis was 100% occlusion of the ostium

-

with large anterior wall myocardial infarction, insulin dependent diabetes mellitus, controlled hypertension, diabetic polyneuropathy, and a possible left shoulder muscle tear.

In December 1998, Dr. Goldstein noted that claimant had social stresses at home and was depressed.

In a January 13, 1999 letter, Dr. Goldstein noted that claimant suffered from ischemic cardiomyopathy secondary to a large anterior wall myocardial infarction and congestive heart failure, which is severe and limits his ability to perform normal activities.

In a November 3, 1999 response to a letter from claimant, Dr. Hoq noted that claimant had recounted instances of mental stress on the job. While acknowledging that mental stress is a risk factor in heart disease, Dr. Hoq wrote that "it is difficult for me to say whether these mental stresses precipitated your heart attack."

In a February 20, 2000 letter, Dr. Hoq opined that "physical exertion [at work] may have triggered the myocardial infarction [claimant] sustained. . . . According to Mr. Torbert he was under a lot of mental stress because of verbal abuse he got from some of his superior officers. I cannot rule out the mental stress as a contributing factor for his heart problem."

Dr. Edward M. Lynch, a cardiologist, reviewed claimant's medical records upon employer's request. In a February 28, 2000 letter, Dr. Lynch opined that claimant sustained a heart attack

-

sometime between August and November 1998.  Dr. Lynch stated

that claimant had fatty plaquing and occlusion to the arteries

to his heart, which resulted in heart muscle damage.  Dr. Lynch

noted that claimant had several risk factors for heart disease,

including diabetes, history of hypertension, smoking, and a

family history of heart disease.  Dr. Lynch recognized that

claimant experienced stress, but stated that there was no

evidence that stress contributes to the development of heart

disease.

In City of Portsmouth Sheriff's Dept. v. Clark, 30 Va. App.

545, 518 S.E.2d 342 (1999), we recognized as follows:

> Under Code 65.2-402(B), a heart disease
> incurred by a deputy sheriff is "presumed to
> be [an] occupational disease[], suffered in
> the line of duty, that [is] covered by [the
> Act] unless such presumption is overcome by
> a preponderance of competent evidence to the
> contrary."  [In Bass v. City of Richmond
> Police Dept., 258 Va. 103, 115, 515 S.E.2d
> 557, 563 (1999),] [t]he Supreme Court of
> Virginia recently re-affirmed the principle
> that an employer may rebut the presumption
> of Code 65.2-402(B) by proving by a
> preponderance of the evidence that: 1) the
> claimant's disease was not caused by his or
> her employment, and 2) there was a
> non-work-related cause of the disease.  When
> the commission determines that an employer
> has failed to overcome the statutory
> presumption, the claimant is entitled to an
> award of benefits.

Id. at 552, 518 S.E.2d at 345 (citations omitted).

The commission found that employer failed to rebut either

prong of the Bass test by a preponderance of the evidence.

-

With respect to the first prong of the Bass test, the evidence established that the treating physician, Dr. Hoq, could not rule out mental stress as a contributing factor to claimant's heart disease.  In addition, although Dr. Lynch opined that "[t]here is no evidence, although this has been studied, that being a policeman or being in a high stress job is a contributory factor to underlying ischemic heart disease," he did not render an opinion as to whether job stress in claimant's case was a causative factor in the development of his heart disease.  "[B]ecause of the legislatively created presumption to the contrary," a physician's opinion that "as a general matter, occupational stress is not linked to the development of heart disease," is of no probative value with respect to the issue of whether a claimant's work contributed to his or her heart disease.  Medlin v. County of Henrico Police, ___ Va. App. ___, ___ S.E.2d ___ (2000).  Accordingly, as fact finder, the commission was entitled to conclude that Dr. Lynch's opinion was not sufficient to overcome the first prong of the Bass test.

With respect to the second prong of the Bass test, Dr. Lynch's opinion, relied upon by employer, that claimant suffered from various risk factors for heart disease, was not sufficient to rebut the presumption, absent an opinion that one or more of those non-work-related risk factors actually caused claimant's heart disease.  "'The showing of "risk factors" alone does not rebut the statutory presumption and does not establish competent

-

medical evidence of a non-work-related cause of the disabling disease.'" Clark, 30 Va. App. at 554, 518 S.E.2d at 346 (quoting City of Norfolk v. Lillard, 15 Va. App. 424, 429, 424 S.E.2d 243, 246 (1992)).

Based upon this record, we cannot find as a matter of law that employer's evidence rebutted the statutory presumption contained in Code § 65.2-402 that claimant's heart disease is an occupational disease under the Act. Accordingly, we affirm the commission's decision.

Affirmed.

-