COURT OF APPEALS OF VIRGINIA


Present:  Judges Baker, Bray and Overton
Argued at Norfolk, Virginia


JUDITH BROWN MACICA
                                            OPINION BY
v.   Record No. 2111-96-1           JUDGE JOSEPH E. BAKER
                                         NOVEMBER 10, 1997
ARA SERVICES TIDEWATER VENDING
and
RELIANCE INSURANCE COMPANY


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Ralph E. Lawrence for appellant.

            Arthur T. Aylward (Midkiff & Hiner, P.C., on
            brief), for appellees.


     Judith Brown Macica (claimant) appeals from a decision of

the Virginia Workers' Compensation Commission (commission) that

denied her request for Dr. Arthur R. Sonberg to be designated as

her treating physician for her on-the-job injuries sustained on

August 8, 1989 while in the employ of ARA Services Tidewater

Vending.  ARA Services Tidewater Vending and Reliance Insurance

Company (jointly referred to herein as ARA) cross-appeal from the

commission's findings that (1) claimant had cured her earlier

refusal to follow the treatment recommendations of her already

designated treating physician, Nathan D. Zasler, and (2)

claimant's refusal to select a new panel physician during the

pendency of her request to change treating physicians did not

constitute a refusal of medical treatment under Code

§ 65.2-603(B).  Finding no error, we affirm the commission's

decision.

Although claimant may have misunderstood some of Dr. Zasler's recommendations for treatment, the applicable facts are not in dispute. Those facts are here stated in the light most favorable to the party prevailing on the issues from which this appeal emanates. See States Roofing Corp. v. Bush Constr. Corp., 15 Va. App. 613, 616, 426 S.E.2d 124, 126 (1993).

Claimant sustained injuries in a fall on August 8, 1989, and ARA accepted those injuries as compensable. Claimant came under the care of Dr. James Allen, who performed cervical discectomy and fusion surgery in August 1989. Although claimant's condition improved after the surgery, she continued to complain of neck pain and other ailments. Thereafter, Dr. Allen declined to treat claimant further, and she eventually saw Dr. Zasler, who initially supported her inability to work. Later, Dr. Zasler concluded that claimant's complaints might be due to "significant psychoemotional factors effecting physical symptoms." Dr. Zasler's December 16, 1994 progress notes disclosed a plan to refer claimant for (1) a neurosurgical opinion, (2) neuropsychological testing, and (3) psychiatric consultation.

Claimant was seen by the neurosurgeon, but failed to complete the neuropsychological testing or psychiatric consultation. On March 27, 1995, by letter to claimant, Dr. Zasler indicated his intent to withdraw as her treating physician effective May 1, 1995, based upon her "inability to follow up with what [Zasler] consider[ed] medically necessary care." He

recommended that she continue under the care of a doctor, but deferred the choice of physician to ARA.

Claimant's attendance at the initial neuropsychological testing sessions with Dr. Karen Haskett was "sporadic" and hindered by her claim of tiring easily. However, after she and her husband were informed on March 24, 1995 of the importance of her timely completion of the testing and the fact that she would be charged for future missed visits, "her attendance . . . was 'fairly good' except for March 30, 1995, when [claimant's] granddaughter was born." Testing was completed after additional sessions on March 28, 29, and 31, April 5, 10, and 19, and May 3, 1995.

In regard to Dr. Zasler's recommended psychiatric evaluation, claimant testified that she and her husband tried to schedule an appointment with Dr. Yaacov Pushkin beginning in March 1995. Her evidence indicated that Dr. Pushkin's office would not schedule an appointment until claimant had spoken directly with Dr. Pushkin, which occurred on April 5, 1995. Claimant's appointment, initially set for May 5, 1995, was postponed several times due to no fault of claimant's, and her psychiatric evaluation was completed on July 27, 1995.

On March 29, 1995, ARA filed an application for hearing, asserting that claimant had refused the treatment recommended by Dr. Zasler in December 1994. At the time, as set forth above, claimant had not scheduled a psychiatric appointment and had not

- 3 -

completed neuropsychological testing.  Claimant opposed ARA's request for hearing, advised the commission that Dr. Zasler had withdrawn as claimant's physician, and requested that the commission designate Dr. Sonberg as her treating physician. Claimant saw Dr. Sonberg beginning December 27, 1994.  Copies of his reports on claimant's condition were forwarded to the commission along with her request.  In the letter to the commission, claimant advised that Dr. Zasler had directed that the three specialists be seen in sequence.  Dr. Zasler denied that he had given that direction.

Upon receipt of a copy of Dr. Zasler's letter of withdrawal, ARA prepared a panel of three new treating physicians from which claimant could choose.  Dr. Sonberg was not one of the three, and by letter of May 17, 1995, claimant refused to select from the panel.  On August 4, 1995, ARA filed an additional claim that claimant's refusal to select a new panel physician constituted refusal of medical treatment.  Claimant countered with a request for payment for Dr. Sonberg's services.

After a hearing, the commission affirmed the deputy's finding that as of March 29, 1995, claimant cured her refusal to follow Dr. Zasler's recommendations and that filing the request to have Dr. Sonberg designated as her treating physician rather than choosing a new panel physician was not a refusal of medical treatment.  However, the commission declined to designate Dr. Sonberg as her treating physician and directed ARA to again offer

- 4 -

the panel of physicians previously tendered to claimant.

"On appellate review, we must construe the evidence in the light most favorable to the party prevailing below." States Roofing Corp., 15 Va. App. at 616, 426 S.E.2d at 126. "If there is evidence, or reasonable inferences can be drawn from the evidence, to support the Commission's findings, they will not be disturbed on review, even though there is evidence in the record to support a contrary finding." Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986). "In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991).

> In the event of a compensable work related injury, Code § [65.2-603] provides that the employer shall furnish free of charge to the employee a physician of his choice from a panel of at least three physicians and the attendant medical costs. If no panel of physicians is offered to the employee, he or she is free to select his [or her] own physician.

Goodyear Tire & Rubber Co. v. Pierce, 9 Va. App. 120, 128, 384 S.E.2d 333, 337-38 (1989) (decided under former Code § 65.1-88). However, once the selection is made, the employee may not seek the treatment of another physician "'unless referred by [the first] physician, confronted with an emergency, or given permission by the employer and/or its insurer or [the]

Commission.'" Davis v. Brown & Williamson Tobacco Co., 3 Va. App. 123, 126, 348 S.E.2d 420, 421 (1986) (quoting Breckenridge v. Marval Poultry Co., 228 Va. 191, 194, 319 S.E.2d 769, 770-71 (1984)) (decided under former Code § 65.1-88).

Here, ARA had offered a second panel of three physicians from which claimant could choose a new treating physician. ARA thereby complied with the requirements of Code § 65.2-603. Claimant was not referred to Dr. Sonberg by the treating physician and was not shown to have been confronted with an emergency or given permission by the employer, its insurer, or the commission to change treating physicians; therefore, we cannot say that the commission erred when it denied claimant's request to have Dr. Sonberg designated as her treating physician. See Davis, 3 Va. App. at 126, 348 S.E.2d at 421.

The commission further found that claimant's actions after March 24, 1995 demonstrated an effort to follow Dr. Zasler's instructions and that, even if claimant previously had refused to follow his instructions, refusal was cured. Evidence in the record supports that decision. "Where reasonable inferences may be drawn from the evidence in support of the commission's factual findings, [those findings] will not be disturbed by this Court on appeal." Hawks v. Henrico Co. Sch. Bd., 7 Va. App. 398, 404, 374 S.E.2d 695, 698 (1988).

In addition, the commission found that the mere filing of a petition to have another doctor become the treating physician,

- 6 -

and claimant's corresponding refusal to select a new panel physician during the pendency of that petition, were not per se a refusal of medical treatment justifying the suspension of benefits under Code § 65.2-603(B).  Under the facts contained in this record, we cannot say that finding is reversible error as a matter of law.

For the reasons stated, the decision of the commission is affirmed.

Affirmed.